**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

SHARON DAVIS,

      *Plaintiff*,

v.

FEIN SUCH KAHN & SHEPARD PC, et al.,

      *Defendants*.

Civil Action No. 18-8560

**<u>OPINION</u>**

**John Michael Vazquez, U.S.D.J.**

    In this case, *pro se* Plaintiff Sharon Davis alleges that several banks, mortgage servicing companies, a law firm, and related entities/individuals (the "Defendants")[1] fabricated documents in connection with two foreclosure proceedings and one bankruptcy proceeding involving Plaintiff as well as engaged in a conspiracy to deprive Plaintiff and others of their homes. D.E. 44 (the "Second Amended Complaint" or "SAC"). Plaintiff alleges six causes of action: (I) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") § 1962(c) described as "RICO Enterprise – Association-in-Fact"; (II) RICO conspiracy pursuant to § 1962(d) described as "RICO Enterprise – Sharon Davis"; (III) RICO conspiracy pursuant to § 1962(d) described as "RICO Enterprise – Association-in-Fact" (IV-A) "Abuse of the Legal Process"; (IV-B) Civil Conspiracy;

---

[1] The remaining Defendants are Caliber Home Loans ("Caliber"); JPMorgan Chase Bank, NA ("JP"); LSF9 Master Participation Trust ("LSF9"); M&T Bank Corporation ("M&T"); Phelan Hallinan Diamond & Jones, PC ("PHDJ"); Orion Financial Group ("Orion"); US Bank Trust, NA ("US Bank Trust"); and Walter D. Nealy ("Nealy").

and (VI) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

Currently pending before the Court are Defendants' motions to dismiss Plaintiff's Second Amended Complaint. D.E. 52, 53, 54, 55. The Court reviewed the parties' submissions[2] and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, the Second Amended Complaint is dismissed.

I.   **INTRODUCTION**[3]

This case concerns a mortgage, two foreclosure proceedings, and a bankruptcy proceeding. Plaintiff first obtained a mortgage (the "Mortgage") on her property in 1996 and refinanced in 2002. SAC. ¶ 29; D.E. 44. On July 28, 2003, Plaintiff refinanced her mortgage again with M.L. Moskowitz d/b/a Equity Now as the lender. *Id.* ¶ 32. Plaintiff made monthly payments to Equity Now through August 5, 2008. *Id.* ¶ 33. At some point during this period, Plaintiff received a letter informing her that the 2002 mortgage had been paid in full to Chase Manhattan Mortgage

---

[2] The Court reviewed JP's Brief, D.E. 52-1 ("JP Br."); LSF9, M&T, and US Bank Trust's Brief, D.E. 53-2 ("LSF9 Br."); PHDJ's Brief, D.E. 54 ("PHDJ Br."); Caliber and Orion's Brief, D.E. 55 ("Caliber Br."); in support of their respective motions to dismiss. Defendant Nealy did not file a motion to dismiss. The Court also reviewed Plaintiff's brief in opposition to the motions, D.E. 61 ("Pl. Opp'n."). The Court then reviewed JP's reply, D.E. 62 ("JP Reply") as well as Caliber and Orion's reply, D.E. 63 ("Caliber Reply").
\
[3] The factual background is taken from Plaintiff's Second Amended Complaint, D.E. 44, and matters of public record referenced or relied upon therein. When reviewing a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the Complaint and matters of public record such as court orders. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *Khan v. Borough of Englewood Cliffs*, No. 12-7837, 2014 WL 295069, at *3 (D.N.J. Jan. 27, 2014).

Corporation (Defendant JP) and "cancelled of record" on October 6, 2003.[4]  *Id.* ¶ 34.  Plaintiff continued to send monthly payments to Equity Now.  *Id.*  Still, "[a]s early as March 2007," Plaintiff had contacted JP to discuss the possibility of a loan modification.  *Id.* ¶ 35.

On July 26, 2008, JP initiated a foreclosure action against Plaintiff (the "2008 Foreclosure Action").  *Id.* ¶ 36.  To resolve this action, Plaintiff entered into a trial loan modification in March 2009.  *Id.* ¶ 38.  Plaintiff raises a number of issues relating to JP's conduct of her mortgage and the foreclosure action, including that JP overbilled her and misled her as to her eligibility for a certain loan modification program.  *Id.* ¶¶ 39-42.  Additionally, JP hired a contractor to burglarize Plaintiff's property, stealing various items.  *Id.* ¶¶ 41-42.  Plaintiff filed a civil action in the United States District Court regarding this conduct, and alleges that when her property suffered fire damage, JP refused to release funds until she dismissed the complaint.[5]  *Id.* ¶ 43.

On July 15, 2014, Plaintiff received a second foreclosure complaint (the "2014 Foreclosure Action"), this time filed by Bayview Loan Servicing ("Bayview"), which had evidently been assigned the Mortgage by JP.  *Id.* ¶¶ 44, 46.  This action resolved with a final judgment being entered against Plaintiff on November 4, 2016.  *Id.* ¶ 47.  She contends that this result was obtained through extrinsic fraud on the court.  *Id.*

On December 3, 2016, Plaintiff filed for Chapter 13 Bankruptcy (the "Bankruptcy Action").  *Id.* ¶ 48.  One of the proof of claims was submitted by Defendant Caliber.  *Id.* ¶ 48.  The

---

[4] Plaintiff refers here to Chase Manhattan Mortgage Corporation.  This entity was succeeded by merger by Chase Home Finance LLC, which was in turn succeeded by merger by Defendant JPMorgan Chase Bank, NA.  (*See* D.E. 55-2 at 28).  Plaintiff sometimes refers to these entities separately, such as when Chase Home Finance LLC initiated the 2008 Foreclosure Action, SAC ¶ 36, and when JPMorgan Chase Bank burglarized the property, SAC ¶ 41.  However, this Court infers that all references to "JPMC" and "Chase" refer to Defendant JP.

[5] This action was voluntarily dismissed without prejudice.  *See* ECF No. 11-cv-6956, D.E. 32.

chain of assignment leading to Caliber's claim is as follows: Equity Now assigned the Mortgage to JP (the "First Assignment"), which assigned it to Bayview (the "Second Assignment"), which assigned it to US Bank Trust (the "Third Assignment"). *Id.*, Ex. A at 2.[6] Caliber filed the claim as "servicer" for Defendant US Bank Trust, which was the "trustee" for Defendant LSF9. *Id.* [7]

Plaintiff objected to Caliber's proof of claim. *Id.* ¶ 59. Her attorney, Defendant Nealy, then attempted to coerce her to enter into an "unconscionable" loan modification with Defendants Caliber and US Bank Trust. *Id.* Caliber responded to the objection. *Id.* ¶ 60. This response contained assignments purporting to prove the chain of title (ostensibly of Plaintiff's Mortgage), including an "unprescribed/blank" assignment that had been concealed during the 2014 Foreclosure Action. *Id.* Additionally, the individual signing on behalf of Bayview did not in fact have authority to sign on behalf of Bayview. SAC ¶ 48. Indeed, she, along with the notary, were in fact employees of Defendant Orion and part of a team devoted to producing forged mortgage assignments for use in bankruptcy and foreclosure cases. *Id*.

Plaintiff alleges that all Defendants, except Nealy, knew or should have known that the chain of title of these various assignments was faulty, and that these errors would make their attempts to foreclose on the property difficult. *Id.* ¶ 85. Plaintiff continues that they therefore engaged in a scheme to forge various assignments in order to successfully convince the court that

---

[6] This chain represents the Court's inference of the chain of assignments, which Plaintiff does not expressly allege. The information is drawn from Caliber's response to Plaintiff's objection to its proof of claim in the Bankruptcy Action, which was attached to the Second Amended Complaint as Exhibit A.

[7] Plaintiff claims that attached to Caliber's proof of claim was an assignment executed by Defendant Orion Financial Group ("Orion"). SAC ¶ 48. It is not clear how Orion was involved in the assignment. Caliber and Orion are represented by the same attorney in this action. D.E. 55.

they had a claim to the Mortgage. *Id.* ¶ 86. Moreover, according to Plaintiff, this scheme of forgery and fabrication has been practiced across the country on thousands of other assignments. *Id.* ¶ 92. Plaintiff adds that the fraud was compounded by the fact that many of these mortgage assignments were included in securitized trusts sold to various investors. *Id.* ¶ 112-114.

Plaintiff brings several causes of action. Counts I through III cover violations of various provisions of the Racketeering Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, *et seq.* by all Defendants except Nealy. Count IV-A[8] alleges abuse of the legal process by all Defendants except Nealy. Count IV-B alleges civil conspiracy against all Defendants. Count VI alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* against Defendants Caliber, US Bank Trust, M&T[9] and Chase. At the core of each of Plaintiff's claims is the allegation that documents submitted to, and relied upon by, the courts in the foreclosure and bankruptcy proceedings were fabricated. *Id.* ¶¶ 1-9.

Plaintiff originally filed her Complaint on April 30, 2018. D.E. 1. On April 24, 2019, this Court issued an Opinion and Order dismissing several parties and claims from the action. D.E. 31 (the "Prior Opinion" or "Prior Op."), 32 (the "Prior Opinion" or "Prior Op."). In the Prior Opinion, the Court found that Plaintiff's claims of fraud in connection with the First Assignment and the Second Assignment were in essence an attack on the Superior Court of New Jersey's final judgment of foreclosure in the 2014 Foreclosure Action and thus barred by the *Rooker-Feldman*

---

[8] Plaintiff labels two consecutive counts as "Count IV." The first (Abuse of the Legal Process) will be referred to as Count IV-A and the second (Civil Conspiracy) will be referred to as Count IV-B.

[9] It is not clear how M&T is involved in the assignments. Plaintiff alleges that M&T was involved in the conspiracy by directing Orion to fabricate assignments. SAC ¶ 87. M&T is represented by the same attorney as US Bank Trust and LSF9. D.E. 53.

doctrine. Prior Op. at 12. The Court also noted that Plaintiff made the same allegations of fraud in the 2014 Foreclosure Action, which the state judge obviously rejected. *Id.* at 11. The Court likewise determined that Plaintiff's claims of fraud as to the First and Second Assignments were barred by New Jersey's entire controversy doctrine. *Id.* at 13-14. As a result, the Court dismissed with prejudice all claims as to all Defendants based on the First and Second Assignments. *Id.* at 14. The Court also ruled that Plaintiff lacked standing to challenge the Third Assignment. *Id.* at 16. The Court concluded, therefore, that the claims as to Defendants based on the Third Assignment were dismissed with prejudice. *Id.*

After the Court's Prior Opinion and Order, Plaintiff filed a First Amended Complaint *qui tam* on May 24, 2019, D.E. 35, which the Court dismissed *sua sponte*, D.E. 42. Plaintiff then filed the Second Amended Complaint on August 30, 2019. D.E. 44. Defendants JP, LSF9, M&T, US Bank Trust, PHDJ, Caliber, and Orion moved to dismiss the Second Amended Complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). D.E. 52, 53, 54, 55. Plaintiff filed a brief in opposition, D.E. 61, and Defendants JP, Caliber, and Orion replied, D.E. 62, 63.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

In deciding a Federal Rule of Civil Procedure 12(b)(1) motion for lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed.[10] A facial attack "contests the

---

[10] This Court also has an independent obligation to establish that it has subject-matter jurisdiction. *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998) ("[A federal] court . . . will raise lack of subject-

sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. PA. 2015)). When a party moves to dismiss prior to answering the complaint, as is the case here, the motion is generally considered a facial attack. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

For a facial attack, "the Court must consider the allegations of the complaint as true," much like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). The burden is on the Plaintiff to prove the Court has jurisdiction. *Id.* (citing *Petruska*, 462 F.3d at 302).

**B. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss when a complaint fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain enough factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789

---

matter jurisdiction on its own motion.") (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

(3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Because Plaintiff is proceeding *pro se*, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys.[11] *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The Court need not, however, credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *D'Agostino v. CECOM RDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010).

## C. Rule 9(b)

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead

---

[11] The Second Amended Complaint was signed by Sharon Davis, *pro se*, but the brief in opposition to the motions to dismiss was filed by a law firm. D.E. 61. However, because the pleading itself was submitted *pro se*, this Court will construe them liberally.

8

or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened pleading standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

In the Prior Opinion, the Court observed that allegations of fraud with respect to the First and Second Assignments were in essence attacks on the sufficiency of the Superior Court of New Jersey's final resolution of the 2014 Foreclosure Action. Prior Op. at 11-12. This Court therefore lacked subject matter jurisdiction to hear claims premised on those allegations due to the *Rooker-Feldman* and entire controversy doctrines. *Id.* at 12, 14. To the extent Plaintiff's Second Amended Complaint also bases its allegations on these assignments, they continue to be barred. The following section discusses these doctrines as they relate to the Second Amended Complaint, as well as standing more generally.

1. *Rooker-Feldman* Doctrine

Defendants again argue that the Court lacks jurisdiction to hear Plaintiff's claims under the *Rooker-Feldman* doctrine. JP Br. at 10-12; LSF9 Br. at 8-10; Caliber Br. at 9-11; PHDJ Br. at 20-21. "The *Rooker-Feldman* doctrine precludes lower federal courts from exercising appellate jurisdiction over final state-court judgments because such appellate jurisdiction rests solely with the United States Supreme Court." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (quoting *Lance*

*v. Dennis*, 546 U.S. 459, 463 (2006)); *see also Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014). The Third Circuit has ruled that the doctrine applies when four elements are met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005)). In other words, "[i]f the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the . . . district court has no subject matter to hear the suit." *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996).

The Court already determined that *Rooker-Feldman* applied to claims related to the validity of the First and Second Assignments and dismissed on that basis. Prior Op. at 12. Plaintiff did not file a motion for reconsideration of the Prior Opinion, and she is not permitted to revisit the issue now. Plaintiff argues that the *Rooker-Feldman* doctrine does not apply here, because, among other reasons, fraud in the procurement of a state court judgment is an independent harm. Plaintiff attempts to paint the First and Second Assignments as components in a fraudulent conspiracy, in which both the state court and the Plaintiff were victims. The Court rejected Plaintiff's argument in its prior opinion and dismissed the claims with prejudice. Those claims remain dismissed with prejudice. To the extent that Plaintiff's claims are related to the validity of the First and Second Assignments, this Court does not have jurisdiction to consider them due to the *Rooker-Feldman* doctrine. Such claims are dismissed pursuant to Rule 12(b)(1).

2. *Entire Controversy Doctrine*

Additionally, Plaintiff's other claims related to the 2008 and 2014 Foreclosure Actions run afoul of New Jersey's entire controversy doctrine, as Defendants argue. JP Br.at 15-17; Caliber Br.at 10-11, LSF9 Br.at 10-11; PHDJ Br. at 18-19. When deciding a motion based on preclusion, the Court applies the preclusion law from the first forum, here New Jersey state court. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 221 (3d Cir. 2016). "The entire controversy doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). Similar to *res judicata*, the entire controversy doctrine "extinguishes any subsequent federal-court claim that could have been joined but was not raised in the prior state action." *Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 WL 2770806, at *7 (D.N.J. May 12, 2016). The entire controversy doctrine is an affirmative defense that may be considered as grounds for dismissal under Rule 12(b)(6) if its application is clear from the face of the complaint. *Rycoline Prods., Inc.*, 109 F.3d at 886.

New Jersey Court Rule 4:30A, which codifies the entire controversy doctrine, provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." Generally, "[t]he entire controversy rule applies in federal court where there has been a previous state court action involving the same transaction." *Puche*, 256 F. Supp. 3d at 547. Rule 4:30A, however, only applies to claims that could have been joined in the prior proceeding. *Siljee*, 2016 WL 2770806, at *8. Further, in the context of foreclosure matters, the entire controversy doctrine is limited to "germane" claims. *Id.* (citing N.J. Ct. Rule 4:64-5). In other words, if a claim was not germane, it would not be subject to the entire controversy doctrine.

11

A claim is germane if it arises out of the underlying mortgage transaction. *Siljee*, 2016 WL 2770806, at *8 (quoting *Leisure Tech.–Ne. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 358 (App. Div. 1975)). A claim is also germane if it is based on "conduct of the mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure[.]" *Zebrowski v. Wells Fargo Bank, N.A.*, No. 07-5236, 2010 WL 2595237, at *6 (D.N.J. June 21, 2010) (quoting *Sun NLF Ltd. Partnership v. Sasso*, 313 N.J. Super. 546, 540 (App. Div. 1998)). The state court retains jurisdiction of germane claims even after final judgment, up until delivery of the sheriff's deed. *Coleman v. Chase Home Finance, LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 472 (3d Cir. 2011).

Once again, the Court already ruled that the entire controversy doctrine applied and dismissed Plaintiff's claims with prejudice. Prior Op. at 14. Again, Plaintiff did not seek reconsideration of the Court's Prior Opinion, and she is precluded from doing so here. To reiterate, Plaintiff's allegations of fraud in connection with the First and Second Assignments arise out of the underlying mortgage transaction. Therefore, these claims are germane and would also be barred by the New Jersey entire controversy doctrine, warranting dismissal under Rule 12(b)(6).[12] Similarly, allegations such as Defendant JP's alleged burglary, SAC ¶ 41, denial of Plaintiff's Home Affordable Modification Program application, SAC ¶ 40, failure to provide notice of foreclosure, SAC ¶ 36, and overbilling of mortgage payments, SAC ¶ 39, also arise out of the

---

[12] Having found that Plaintiff's claims related to the First and Second Assignments are barred by the *Rooker-Feldman* doctrine and New Jersey entire controversy doctrine, the Court does not conduct a separate analysis as to the *res judicata* or standing arguments that were raised. However, like the Third Assignment, it does not appear that Plaintiff has standing to challenge the First or Second Assignments.

underlying mortgage transaction and occurred prior to the institution of the 2014 Foreclosure Action. These claims, too, are germane. Each action refers to conduct by the mortgagee in relation to the conduct of the Mortgage. Further, even though Plaintiff alleges she was not aware of JP's overbilling until 2014, SAC ¶ 39, final judgment was not entered in the 2014 Foreclosure Action until November 4, 2016, SAC ¶ 47, and the state court still held jurisdiction over the claim at the time of discovery. This is true even though JP had already assigned the Mortgage to Bayview prior to the institution of the 2014 Foreclosure Action. Plaintiff could have informed the state court of the alleged impermissible conduct, giving the court the opportunity to redress Plaintiff's grievances. *See Puche*, 256 F. Supp. 3d at 548-549. All allegations against JP are therefore germane to the 2014 Foreclosure Action and accordingly are barred by the entire controversy doctrine.

3. *Standing*

While the First and Second Assignments may not be challenged because of their relationship to the foreclosure proceedings — as the Court ruled in its Prior Opinion — many of Plaintiff's claims relate to the allegedly fraudulent Third Assignment, which occurred after those proceedings. However, Plaintiff lacks standing to challenge the validity of this assignment as well. This issue was also decided in the Court's Prior Opinion and was also dismissed with prejudice. Prior Op. at 16. Plaintiff did not seek reconsideration of the Prior Opinion, and cannot re-raise the issue now.

### B. RICO Claims (Counts I-III)

Plaintiff brings a variety of RICO claims, including violations of §§ 1962(c) and 1962(d). The crux of the first RICO count is that the Defendants "associated together for the common purpose of defrauding investors, wrongfully creating and recording fabricated assignments

13

throughout New Jersey and the United States to attempt to validate standing in foreclosure and/or bankruptcy matters[.]" SAC ¶ 120. This is evidently an attack on the First, Second, and Third Assignments, which, as discussed above, are attacks that Plaintiff is precluded from making as decided in the Prior Opinion.

Count Three alleges that the Defendants fraudulently presented claims for mortgages that they did not actually have title to. *Id.* ¶ 132. This also appears to be an attack on the sufficiency of the assignments. Indeed, Plaintiff calls attention to "wrongful conduct alleged here, including, but not limited to, the false signatures used in manufactured mortgage assignments, each of the mortgage-backed securities sold to investors . . . ." *Id.* Plaintiff does not have standing to challenge the assignments. Nor does Plaintiff explain how she has standing to challenge the validity of mortgage-backed securities that she did not purchase.

In Count Two, Plaintiff mentions allegations that are not directly related to the assignments. Plaintiff alleges that the Defendants "burglarize[d] [her] home when there had been no foreclosure filed or court order seeking such entry" and engaged in "severely inflated billing[.]" *Id.* ¶ 125. These allegations appear to refer to actions taken by Defendant JP in the conduct of the Mortgage. As discussed above, these allegations are germane to the underlying mortgage transaction and Plaintiff is barred from seeking relief for them in this action due to the entire controversy doctrine.

Even if they were not, Plaintiff still fails to state a RICO claim. Section 1962(c) "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). Section 1962(d), in turn, makes it illegal to conspire to violate section 1962(c). To plead

a plausible claim under section 1962 a plaintiff "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 362 (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citation omitted)). "According to the RICO statute, a 'pattern of racketeering activity' requires at least two acts of racketeering activity within a ten-year period." *Id.* at 363 (quoting 18 U.S.C. § 1961(5)). "These predicate acts of racketeering may include, *inter alia*, federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343." *Lum*, 361 F.3d at 223.

Plaintiff makes no attempt to defend the substance of her RICO claims.[13] Putting aside the claims that Defendants have engaged in a nationwide practice of fraudulent assignments and foreclosures and other conduct related to the 2008 and 2014 Foreclosure Actions, which this Plaintiff cannot challenge, a review of the Second Amended Complaint does not reveal sufficient factual allegations for this Court to infer a pattern of racketeering activity. It is clear from a review of the Second Amended Complaint that Plaintiff's RICO claims are based on a conspiracy to forge assignments to obtain foreclosures. As discussed above, Plaintiff cannot bring any claims on this basis. Accordingly, she has failed to plausibly state a claim for any violations of RICO.

For this reason, Plaintiff's RICO conspiracy claim under Section 1962(d) also fail. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F. 3d 1153, 1191 (3d Cir. 1993) ("Any claim under section 1962(d) based on conspiracy to violate other subsections of section 1962 necessarily must fail if

---

[13] Indeed, the brief in opposition gives this Court pause as to whether it was even intended for this matter. The arguments and claims are generalized and never refer to specific allegations in the Second Amended Complaint. There are numerous references to "Wells Fargo," an entity which is not, and never was, party to this litigation. The brief also argues that the RICO claim should withstand "Summary Judgment," which is not implicated in the current motion. *See* Pl. Opp'n at 15.

the substantive claims are themselves deficient."). The Court dismisses Plaintiff's RICO claims (Counts I-III).

### C. Abuse of Legal Process (Count IV-A)

Plaintiff brings a claim for abuse of the legal process against all Defendants except Nealy. The allegation focuses on documents filed with the bankruptcy court during the 2016 Bankruptcy Action. SAC ¶ 138. By submitting a proof of claim containing a fraudulent assignment, Plaintiff argues, the Defendants sought to use the bankruptcy court as a vessel to commit fraud. *Id.* ¶ 162.

Plaintiff clarifies in her brief that she is pursuing a claim for the tort of malicious abuse of process. Pl. Opp'n at 2. The elements are as follows:

> The tort of malicious abuse of process lies not for commencing an improper action, but for misusing or misapplying process after it is issued. To be found liable for malicious abuse of process, a party must have performed additional acts after issuance of process which represent the perversion or abuse of the legitimate purposes of that process. We have further clarified that "process is not abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing further acts whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff. In order for there to be "abuse" of process, therefore, a party must "use" process in some fashion, and that use must be "coercive" or "illegitimate."

*Hoffman v. Asseenontv.com, Inc.*, 404 N.J. Super. 415, 431-32 (N.J. Super Ct. App. Div. 2009) (quotations and citations omitted). Moreover, "[a]n intent to threaten the defendant with process one never intended to pursue might satisfy the abuse-of-process tort, because maliciously threatening process in an existing case could be as unfairly coercive as abusing process in some more direct way." *Id.* at 432.

Plaintiff agrees that the tort requires allegations of "additional acts" beyond initiating legal process. *See* Pl. Opp'n at 3. But she does not explain what additional acts any Defendants have

16

taken. The only relevant allegation is that Defendants submitted a proof of claim in a bankruptcy proceeding that allegedly contained fraudulent assignments. Plaintiff says that Defendants "[f]irst . . . served the initial complaint without a proper known chain of assignments, and made numerous misrepresentations to the Foreclosure court and bankruptcy court." Pl. Opp'n at 3-4. But Plaintiff does not describe what happened "second" or next. The purpose of filing the proof of claim was to obtain a secured lien in the course of Plaintiff's bankruptcy. Plaintiff argues that the ulterior motive was "concealing Defendants [sic] own culpability in the tax liability of a billion dollar investment vehicle, and for the purpose of expediency because Defendants knew they could get away with it." Pl. Opp'n at 4. Even if the allegation were plausibly supported, which it is not, an ulterior motive by itself is not enough. *See Emolo v. McDaniel*, No. L-3645-08, 2009 WL 2243792, at *4 (N.J. Super. Ct. App. Div. July 29, 2009) ("An ulterior motive is not in itself sufficient; it must be used outside the scope of the process to be considered improper. Regular and legitimate use of process with bad intentions is likewise not malicious abuse of process.") (citations omitted). Plaintiff has failed to plead any acts beyond filing a proof of claim containing allegedly fraudulent assignments. There is no indication that any Defendant has misused process in a "coercive" or "illegitimate" manner. While Plaintiff argues that Defendants made "multiple misrepresentations" to the bankruptcy court in addition to the allegedly fraudulent assignment, she does not plead what those misrepresentations were. Accordingly, she has failed to state a claim for malicious abuse of process and this claim (Count IV-A) is dismissed.

### D. Fair Debt Collection Practices Act (Count VI)

Plaintiff alleges that Defendants Caliber, US Bank Trust, M&T, and JP have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.* US Bank Trust and

M&T argue that Plaintiff's claims are time-barred. LSF9 Br.at 23-24. Plaintiff does not respond to this argument.

> To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

Plaintiff filed her original Complaint on April 30, 2018. D.E. 1. The only factual allegations that occurred within one year of that date refer to the proof of claim filed in the 2016 Bankruptcy Action. Plaintiff does not explain in her brief which actions the Defendants took which might have violated the FDCPA, or which provisions of the FDCPA they violated. A review of the Second Amended Complaint reveals the crux of Plaintiff's claim — that Caliber, US Bank Trust, and M&T did not have authority to seek payment on her Mortgage due to the fraudulent Third Assignment. As discussed above, Plaintiff does not have standing to challenge the validity of the Third Assignment. Plaintiff does not plead any other facts in the relevant time period that could give rise to an FDCPA claim.[14]

Accordingly, Plaintiff's FDCPA claim (Count VI) is dismissed.

### E. Civil Conspiracy (Count IV-B)

---

[14] Plaintiff does allege that Defendant Nealy "repeatedly attempted to coerce the Relator to commit to a [sic] unconscionable permanent loan modification with Defendants 'Caliber' and 'US Bank Trust NA.'" SAC ¶ 59. However, Plaintiff does not explain why the modification was "unconscionable" or how Nealy, her own attorney, attempted to coerce her into accepting it.

Finally, Plaintiff brings a civil conspiracy claim against all Defendants. SAC ¶¶ 163-168. Under New Jersey law, "[a] conspiracy is not actionable absent an independent wrong." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 497 (D.N.J. 1998) (citing *Tynan v. General Motors Corp.*, 248 N.J. Super. 654, 668-69 (App.Div.1991), *rev'd in part on other grounds*, 127 N.J. 269 (1992)). Since the Court finds that Plaintiff has failed to plausibly plead any of her other claims, Plaintiff's civil conspiracy claim also fails. *See id.* ("[T]he dismissal of [the plaintiff]'s other causes of action requires dismissal of the conspiracy claim."). Plaintiff's civil conspiracy claim (Count IV-B) is dismissed.

## IV. DISMISSAL WITH PREJUDICE

In her Second Amended Complaint, Plaintiff once again asserted many issues that the Court had already dismissed with prejudice in its Prior Opinion. Because Plaintiff is proceeding *pro se*, the Court rehashed some of its prior analysis.[15] But a party may not amend a claim that is dismissed with prejudice because a dismissal with prejudice operates as an adjudication on the merits and bars a later action against the same defendants or their privies. *Gambocz v. Yelencsics*, 468 F.2d 837, 840 (3d Cir. 1972). A dismissal without prejudice is different. When dismissing without prejudice, a court generally denies leave to amend only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) the amendment would be futile. *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984).

Here the Court finds that any attempt to amend the claims that were dismissed without prejudice in the Court's Prior Opinion would be futile. The Court's Prior Opinion attempted to explain in detail the shortcomings of Plaintiff's filing. However, the Second Amended Complaint,

---

[15] Again, while it is not clear that Plaintiff continues to proceed *pro se*, it is at least clear that any counsel became involved in the litigation after the issuance of the Prior Opinion.

in large part, relies on matters that were already dismissed with prejudice. It is clear that the thrust of Plaintiff's theory of the case centers on the First Assignment, the Second Assignment, and the Third Assignment. As a result, the Court grants the motions to dismiss and dismisses this case with prejudice. If Plaintiff is currently (see notes 11 and 15 above) proceeding *pro se*, the Court notes that this means that Plaintiff may *not* file a third amended complaint. Instead, if Plaintiff disagrees with the Court's decision, she must seek relief by way of a timely appeal.

## V.    CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (D.E. 52, 53, 54, 55) are granted and the Second Amended Complaint is dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: June 25, 2020

_____
John Michael Vazquez, U.S.D.J.